IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

APPLE INC.,                                       )
                                                  )
      Plaintiff,                           )
                                                  )
      v.                                   )      C.A. No. _____
                                                  )
ATICO INTERNATIONAL USA, INC., a                  )
Delaware corporation, and NEW ATICO              )
INTERNATIONAL LIMITED CORPORATION, a             )
Delaware corporation,                             )
                                                  )
      Defendants.                          )

---

## COMPLAINT FOR PATENT INFRINGEMENT, TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

Plaintiff APPLE INC. ("Apple"), for its complaint against Defendants, alleges as follows:

### INTRODUCTION

1.      Apple is the developer and seller of a revolutionary consumer electronics product, the iPod® digital music player. First launched in October, 2001, the iPod® has become a cultural icon, one of the most widely-acclaimed and sought-after consumer product of all time. The *Washington Post* described the iPod® as "a work of technological art." With over 140 million iPods® sold to date, Apple has transformed how millions of music lovers acquire, manage and use their music and video. The iPod's® success has spawned an enormous demand for iPod®-compatible accessories, including speaker systems, docking stations, cables, adapters and numerous other products. In order to ensure the quality, reliability and compatibility of these accessories and to protect the value of its goodwill and intellectual property relating to the iPod® brand, Apple maintains a robust licensing program (called Made for iPod®) through which third party companies can obtain Apple's authorization and license to manufacture, sell and distribute iPod®-compatible accessories. As more fully alleged below, Defendants herein manufacture and/or sell iPod® accessories which are not licensed or otherwise sponsored by Apple. These

products not only infringe Apple's valuable intellectual property pertaining to the iPod®, but they are advertised and sold in a manner that falsely and unfairly implies affiliation with Apple. To prevent the continued unfair and unlawful exploitation of Apple's proprietary technology and to avoid further consumer confusion over the source of origin of these products, Apple has instituted the present action against Defendants and seeks an injunction against further infringement of Apple's intellectual property, an award of its actual damages, and its attorneys' fees.

## PARTIES

2.    Apple is a California corporation with its principal place of business located at 1 Infinite Loop, Cupertino, California. Apple is a computer hardware, software and consumer electronics company founded in 1976. Apple's current line of products include, among other things, personal computers, computer software and hardware, portable media players and mobile phones. Apple employs over 20,000 permanent and temporary workers worldwide, and operates approximately 200 retail stores in five countries and an online store where its products are advertised and sold.

3.    Upon information and belief, Defendants ATICO INTERNATIONAL USA, INC. and NEW ATICO INTERNATIONAL LIMITED CORPORATION, are Delaware corporations each with their principal place of business located at 501 South Andrews Avenue, Fort Lauderdale, Florida. Defendants ATICO INTERNATIONAL USA, INC. and NEW ATICO INTERNATIONAL LIMITED CORPORATION are hereinafter jointly referred to as "Atico" or "Defendants."

## JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331 and 1338(a)-(b) and 15 U.S.C. §1121 because this action arises under the patent and trademark laws of the United States.

5.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§1391(b)-(c) and 1400(b) as Defendants have done business in this judicial district, have committed acts of patent

infringement and trademark infringement in this judicial district, and continue to commit such acts in this judicial district, entitling Apple to relief as hereinafter set forth.

## FACTUAL ALLEGATIONS

6.      Apple has devoted substantial time and resources to developing, manufacturing and marketing its iPod® brand of portable media players.  The first generation iPod® was introduced in October 2001; the second generation iPod® was introduced in July 2002; and the third generation iPod® was released in April 2003.  The current line of iPod® products includes the iPod® shuffle; the iPod® classic; the iPod® nano; and the iPod® touch.

7.      Since its inception, the iPod® has spawned numerous accessory devices manufactured and sold by companies other than Apple, including docking stations, speaker systems, AM/FM alarm clock radios, cables, adapters, RF transmitters, etc., which are designed to work exclusively with the iPod®.

8.      To ensure the quality and compatibility of iPod® accessories with the iPod® line of products, Apple implemented the "Made for iPod" ("MFi") licensing program which allows manufactures, distributors and retailers of iPod® accessories to obtain the benefits of Apple's proprietary technology, intellectual property and support pertaining to the iPod® and to use the "Made for iPod"® logo in their packaging and advertising.  Apple has developed a growing international portfolio of intellectual property rights protecting different aspects of the iPod®, which in the United States includes various utility patents, design patents and trademarks.

9.      Upon information and belief, Atico manufactures and distributes various iPod® accessories branded under the name "Living Solutions," which are sold online and nationwide in stores located in Delaware and elsewhere, such as Walgreens and Happy Harry's drug stores.  The Living Solutions accessories include: 1) AM/FM Portable Boom Box with iPod® Dock; 2) AM/FM Alarm Clock Radio with iPod® Dock; and 3) Portable Speakers with iPod® Dock.

10.     As alleged further below, the Living Solutions iPod® accessories offered by Defendants are not licensed or otherwise authorized by Apple.  By misappropriating Apple's

RLF1-3282351-1

proprietary technology and designs, and by utilizing several Apple registered word and design trademarks on the Living Solutions packaging that are likely to cause consumer confusion as to the source, sponsorship or affiliation of the products, Defendants are infringing on Apple's intellectual property and are wrongfully and unfairly exploiting Apple's name and reputation.

### FIRST CLAIM FOR RELIEF

(Infringement of U.S. Patent No. 7,305,506)

11.    Apple incorporates by reference paragraphs 1 through 10 above.

12.    On December 4, 2007, United States Patent No. 7,305,506 ("the '506 patent") was duly and legally issued for an invention entitled: "Method and System for Transferring Status Information Between a Media Player and an Accessory." Apple is the assignee of the '506 patent and continues to hold all rights and interest in the '506 patent. A copy of the '506 patent is attached hereto as Exhibit A.

13.    Defendants have directly, indirectly, contributorily and/or by inducement infringed and continue to infringe the '506 patent through their manufacture, use, sale, importation and/or offer for sale of unlicensed iPod® accessories.

14.    Defendants' infringement of the '506 patent has caused and continues to cause damage to Apple in an amount to be determined at trial.

15.    Defendants' infringement as herein alleged will continue to cause immediate and irreparable harm to Apple for which there is no adequate remedy at law, unless this Court enjoins and restrains such activities.

16.    Upon information and belief, Defendants' infringement of the '506 patent is willful and deliberate, entitling Apple to increased damages under 35 U.S.C. §284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. §285.

### SECOND CLAIM FOR RELIEF

(Infringement of U.S. Patent No. D551,212)

17.    Apple incorporates by reference paragraphs 1 through 10 above.

18.    On September 18, 2007, United States Patent No. D551,212 ("the '212 patent") was duly and legally issued for an invention entitled: "Dock Insert." Apple is the assignee of the '212 patent and continues to hold all rights and interest in the '212 patent. A copy of the '212 patent is attached hereto as Exhibit B.

19.    Defendants have directly, indirectly, contributorily and/or by inducement infringed and continue to infringe the '212 patent through their manufacture, use, sale, importation and/or offer for sale of unlicensed iPod® accessories.

20.    Defendants' infringement of the '212 patent has caused and continues to cause damage to Apple in an amount to be determined at trial. Apple is also entitled to an award of Defendants' profits derived from the infringement pursuant to 35 U.S.C. §289.

21.    Defendants' infringement as herein alleged will continue to cause immediate and irreparable harm to Apple for which there is no adequate remedy at law, unless this Court enjoins and restrains such activities.

22.    Upon information and belief, Defendants' infringement of the '212 patent is willful and deliberate, entitling Apple to increased damages under 35 U.S.C. §284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. §285.

### THIRD CLAIM FOR RELIEF

(Infringement of U.S. Patent No. D551,213)

23.    Apple incorporates by reference paragraphs 1 through 10 above.

24.    On September 18, 2007, United States Patent No. D551,213 ("the '213 patent") was duly and legally issued for an invention entitled: "Dock Insert." Apple is the assignee of the '213 patent and continues to hold all rights and interest in the '213 patent. A copy of the '213 patent is attached hereto as Exhibit C.

25.    Defendants have directly, indirectly, contributorily and/or by inducement infringed and continue to infringe the '213 patent through their manufacture, use, sale, importation and/or offer for sale of unlicensed iPod® accessories.

26.    Defendants' infringement of the '213 patent has caused and continues to cause damage to Apple in an amount to be determined at trial.  Apple is also entitled to an award of Defendants' profits derived from the infringement pursuant to 35 U.S.C. §289.

27.    Defendants' infringement as herein alleged will continue to cause immediate and irreparable harm to Apple for which there is no adequate remedy at law, unless this Court enjoins and restrains such activities.

28.    Upon information and belief, Defendants' infringement of the '213 patent is willful and deliberate, entitling Apple to increased damages under 35 U.S.C. §284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. §285.

### FOURTH CLAIM FOR RELIEF

(Infringement of U.S. Patent No. D552,085)

29.    Apple incorporates by reference paragraphs 1 through 10 above.

30.    On October 2, 2007, United States Patent No. D552,085 ("the '085 patent") was duly and legally issued for an invention entitled: "Dock Insert."  Apple is the assignee of the '085 patent and continues to hold all rights and interest in the '085 patent.  A copy of the '085 patent is attached hereto as Exhibit D.

31.    Defendants have directly, indirectly, contributorily and/or by inducement infringed and continue to infringe the '085 patent through their manufacture, use, sale, importation and/or offer for sale of unlicensed iPod® accessories.

32.    Defendants' infringement of the '085 patent has caused and continues to cause damage to Apple in an amount to be determined at trial.  Apple is also entitled to an award of Defendants' profits derived from the infringement pursuant to 35 U.S.C. §289.

33.    Defendants' infringement as herein alleged will continue to cause immediate and irreparable harm to Apple for which there is no adequate remedy at law, unless this Court enjoins and restrains such activities.

34.    Upon information and belief, Defendants' infringement of the '085 patent is

willful and deliberate, entitling Apple to increased damages under 35 U.S.C. §284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. §285.

## FIFTH CLAIM FOR RELIEF

### (Infringement of U.S. Patent No. D558,738)

35.    Apple incorporates by reference paragraphs 1 through 10 above.

36.    On January 1, 2008, United States Patent No. D558,738 ("the '738 patent") was duly and legally issued for an invention entitled: "Docking Station." Apple is the assignee of the '738 patent and continues to hold all rights and interest in the '738 patent. A copy of the '738 patent is attached hereto as Exhibit E.

37.    Defendants have directly, indirectly, contributorily and/or by inducement infringed and continue to infringe the '738 patent through their manufacture, use, sale, importation and/or offer for sale of unlicensed iPod® accessories.

38.    Defendants' infringement of the '738 patent has caused and continues to cause damage to Apple in an amount to be determined at trial. Apple is also entitled to an award of Defendants' profits derived from the infringement pursuant to 35 U.S.C. §289.

39.    Defendants' infringement as herein alleged will continue to cause immediate and irreparable harm to Apple for which there is no adequate remedy at law, unless this Court enjoins and restrains such activities.

40.    Upon information and belief, Defendants' infringement of the '738 patent is willful and deliberate, entitling Apple to increased damages under 35 U.S.C. §284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. §285.

## SIXTH CLAIM FOR RELIEF

### (Trademark Infringement)

41.    Apple incorporates by reference paragraphs 1 through 10 above.

42.    Apple owns various registered trademarks pertaining to the iPod®, including: the Made for iPod® mark and design (U.S. Reg. No. 3,341,286); the iPod® design (U.S. Reg. No.

3,341,214); and the iPod® mark (U.S. Reg. Nos. 2,835,698; 3,089,360; 3,341,191) (collectively "the Apple trademarks").

43.     Without Apple's consent, Defendants have used the Apple trademarks in connection with the sale, offer for sale, distribution, marketing, and/or advertising of Defendants' iPod® accessories.

44.     These acts of trademark infringement have been committed with the intent to cause and are likely to cause confusion, mistake or deception, and are in violation of Section 32 of the Lanham Act, 15 U.S.C. §1114.

45.     Defendants' infringement as herein alleged has and will continue to cause immediate and irreparable harm to Apple for which there is no adequate remedy at law, unless this Court enjoins and restrains such activities.

46.     Upon information and belief, Apple alleges that Defendants' infringement of the Apple trademarks as alleged herein is intentional and exceptional, entitling Apple to an award of Defendants' profits, Apple's damages, costs and attorneys' fees, pursuant to 15 U.S.C. §1117(a).

## SEVENTH CLAIM FOR RELIEF

### (Unfair Competition Under Federal Law)

47.     Apple incorporates by reference paragraphs 1 through 10 and 42 through 46 above.

48.     Defendants' use in commerce of marks identical and/or confusingly similar to the iPod® mark and the Apple trademarks constitutes false designation of origin and misleading representations of fact that are likely to cause confusion, mistake, and/or deceive as to the affiliation, connection or association with Apple and/or its goods and services, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

49.     As a direct and proximate result of Defendants' activities, Apple has suffered damages and, unless Defendants are enjoined, Apple will continue to suffer monetary loss and irreparable injury to its business, reputation and goodwill.

50.    Upon information and belief, Apple alleges that Defendants' unfair competition as alleged herein is an exceptional case and intentional.  Accordingly, Apple is entitled to an award of Defendants' profits, Apple's damages, costs and attorneys' fees, pursuant to 15 U.S.C. §1117(a) and as otherwise provided by law.

## PRAYER FOR RELIEF

WHEREFORE, Apple prays for the following relief:

1.    That judgment be entered in favor of Apple that the '506, '212, '213, '085, and '738 Patents are infringed by Defendants in violation of 35 U.S.C. §271;

2.    That judgment be entered in favor of Apple that Defendants' have infringed and are infringing the Apple trademarks;

3.    That Apple be granted an accounting of all damages sustained as a result of Defendants' infringement of Apple's patents as herein alleged;

4.    That Apple be awarded actual damages with prejudgment interest according to proof, and enhanced damages pursuant to 35 U.S.C. §284;

5.    That a permanent injunction be issued pursuant to 35 U.S.C. §283 enjoining Defendants, their officers, agents, servants, employees and all other persons acting in concert or participation with them from further infringement of the '506, '212, '213, '085 and '738 Patents;

6.    That a permanent injunction be issued pursuant to 15 U.S.C. §1116 enjoining Defendants, their officers, agents, servants, employees and all other persons acting in concert or participation with them from using, including but not limited to selling, or otherwise exploiting or attempting to exploit, Apple's trademarks listed herein for and/or in connection with any business involving the offer or sale of goods or serves, or for any other purpose;

7.    That this case be decreed an "exceptional case" within the meaning of 35 U.S.C. §285, and that reasonable attorneys' fees and costs be awarded to Apple;

8.    That this case be decreed an "exceptional case" pursuant to 15 U.S.C. §1117(a), and that Apple recover Defendants' profits, together with its damages, trebled, costs of the action

- 9 -

and reasonable attorneys' fees; and

9.    That Apple be awarded such further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Apple hereby demands a jury trial as to all issues triable to a jury.


OF COUNSEL:

Theodore T. Herhold
Angus M. MacDonald
Priya Sreenivasan
Townsend and Townsend and Crew LLP
379 Lytton Avenue
Palo Alto, CA  94301
650.326.2400

Dated:  May 14, 2008

*Anne Shea Gaza*

Frederick L. Cottrell III (#2555)
cottrell@rlf.com
Jeffrey L. Moyer (#3309)
moyer@rlf.com
Anne Shea Gaza
gaza@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
302.651.7700

*Attorneys for Plaintiff Apple Inc.*


- 10 -

®JS 44 (Rev 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provide by local rules of court This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiatin the civil docket sheet (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM )

## I. (a) PLAINTIFFS

APPLE, INC

(b) County of Residence of First Listed Plaintiff _____
(EXCEPT IN U S PLAINTIFF CASES)

(c) Attorney's (Firm Name, Address, and Telephone Number)

Frederick L. Cottrell, III
Jeffrey L Moyer, Esquire
Anne Shea Gaza, Esquire
Richards, Layton & Finger
One Rodney Square - P O Box 551
Wilmington, DE 19899
302-651-7700

## DEFENDANTS

ATICO INTERNATIONAL USA, INC , and NEW ATICO INTERNATIONAL LIMITED CORPORATION

County of Residence of First Listed Defendant Broward County, Fort Lauderdale, FL
(IN U S PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

O 1 U.S. Government Plaintiff

● 3 Federal Question (U.S. Government Not a Party)

O 2 U.S. Government Defendant

O 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)

(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | O 1 | O 1 | Incorporated or Principal Place of Business In This State | O 4 | O 4 |
| Citizen of Another State | O 2 | O 2 | Incorporated and Principal Place of Business In Another State | O 5 | O 5 |
| Citizen or Subject of a Foreign Country | O 3 | O 3 | Foreign Nation | O 6 | O 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Onl)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| O 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | O 610 Agriculture | O 422 Appeal 28 USC 158 | O 400 State Reapportionment |
| O 120 Marine | O 310 Airplane | O 362 Personal Injury - Med. Malpractice | O 620 Other Food & Drug | O 423 Withdrawal 28 USC 157 | O 410 Antitrust |
| O 130 Miller Act | O 315 Airplane Product Liability | O 365 Personal Injury - Product Liability | O 625 Drug Related Seizure of Property 21 USC 881 | | O 430 Banks and Banking |
| O 140 Negotiable Instrument | O 320 Assault, Libel & Slander | O 368 Asbestos Personal Injury Product Liability | O 630 Liquor Laws | **PROPERTY RIGHTS** | O 450 Commerce |
| O 150 Recovery of Overpayment & Enforcement of Judgment | O 330 Federal Employers' Liability | | O 640 R.R. & Truck | O 820 Copyrights | O 460 Deportation |
| O 151 Medicare Act | O 340 Marine | **PERSONAL PROPERTY** | O 650 Airline Regs. | ● 830 Patent | O 470 Racketeer Influenced and Corrupt Organizations |
| O 152 Recovery of Defaulted Student Loans (Excl Veterans) | O 345 Marine Product Liability | O 370 Other Fraud | O 660 Occupational Safety/Health | O 840 Trademark | O 480 Consumer Credit |
| O 153 Recovery of Overpayment of Veteran's Benefits | O 350 Motor Vehicle | O 371 Truth in Lending | O 690 Other | | O 490 Cable/Sat TV |
| O 160 Stockholders' Suits | O 355 Motor Vehicle Product Liability | O 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | O 810 Selective Service |
| O 190 Other Contract | O 360 Other Personal Injury | O 385 Property Damage Product Liability | O 710 Fair Labor Standards Act | O 861 HIA (1395ff) | O 850 Securities/Commodities/ Exchange |
| O 195 Contract Product Liability | | | O 720 Labor/Mgmt. Relations | O 862 Black Lung (923) | O 875 Customer Challenge 12 USC 3410 |
| O 196 Franchise | | | O 730 Labor/Mgmt.Reporting & Disclosure Act | O 863 DIWC/DIWW (405(g)) | O 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | O 740 Railway Labor Act | O 864 SSID Title XVI | O 891 Agricultural Acts |
| O 210 Land Condemnation | O 441 Voting | O 510 Motions to Vacate Sentence | O 790 Other Labor Litigation | O 865 RSI (405(g)) | O 892 Economic Stabilization Act |
| O 220 Foreclosure | O 442 Employment | **Habeas Corpus:** | O 791 Empl. Ret. Inc Security Act | **FEDERAL TAX SUITS** | O 893 Environmental Matters |
| O 230 Rent Lease & Ejectment | O 443 Housing/ Accommodations | O 530 General | | O 870 Taxes (U S Plaintiff or Defendant) | O 894 Energy Allocation Act |
| O 240 Torts to Land | O 444 Welfare | O 535 Death Penalty | **IMMIGRATION** | O 871 IRS—Third Party 26 USC 7609 | O 895 Freedom of Information Act |
| O 245 Tort Product Liability | O 445 Amer w/Disabilities - Employment | O 540 Mandamus & Other | O 462 Naturalization Application | | O 900 Appeal of Fee Determination Under Equal Access to Justice |
| O 290 All Other Real Property | O 446 Amer w/Disabilities - Other | O 550 Civil Rights | O 463 Habeas Corpus - Alien Detainee | | O 950 Constitutionality of State Statutes |
| | O 440 Other Civil Rights | O 555 Prison Condition | O 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

● 1 Original Proceeding

O 2 Removed from State Court

O 3 Remanded from Appellate Court

O 4 Reinstated or Reopened

O 5 Transferred from another district (specify)

O 6 Multidistrict Litigation

Appeal to District
O 7 Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U S Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity)

15 U.S.C. §§1117(a), 1121, 1125(a); 35 U.S.C. §§ 271, 283-285, 289

Brief description of cause: Complaint for patent infringement, trademark infringement and Unfair Competition

## VII. REQUESTED IN COMPLAINT:

O CHECK IF THIS IS A CLASS ACTION UNDER F R C P 23

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND: ● Yes O No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE

DOCKET NUMBER:

DATE
May 14, 2008

SIGNATURE OF ATTORNEY OF RECORD
Anne Shea Gaza

**FOR OFFICE USE ONLY**

RECEIPT# _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG JUDGE _____

RLF1-3270141-1

JS 44 Reverse (Rev 12/07)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed  The attorney filing a case should complete the form as follows:

**I. (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official. giving both name and title

(b)  County of Residence  For each civil case filed, except U  S  plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing  In U S  plaintiff cases. enter the name of the county in which the first listed defendant resides at the time of filing (NOTE: In land condemnation cases. the county of residence of the ' defendant" is the location of the tract of land involved )

(c)  Attorneys  Enter the firm name, address, telephone number. and attorney of record  If there are several attorneys. list them on an attachment. noting in this section "(see attachment)"

**II.    Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F R C P . which requires that jurisdictions be shown in pleadings Place an "X" in one of the boxes  If there is more than one basis of jurisdiction. precedence is given in the order shown below

United States plaintiff  (1) Jurisdiction based on 28 U S C  1345 and 1348  Suits by agencies and officers of the United States are

included here  United States defendant  (2) When the plaintiff is suing the United States, its officers or agencies. place an "X" in

this box

Federal question  (3) This refers to suits under 28 U S C  1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States  In cases where the U S  is a party, the U S  plaintiff or defendant code takes precedence, and box 1 or 2 should be marked

Diversity of citizenship  (4) This refers to suits under 28 U S C  1332, where parties are citizens of different states  When Box 4 is checked. the citizenship of the different parties must be checked  (See Section III below; federal question actions take precedence over diversity cases )

**III.    Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above Mark this section for each principal party

**IV. Nature of Suit.** Place an "X" in the appropriate box  If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit  If the cause fits more than one nature of suit, select the most definitive

**V.    Origin.** Place an "X" in one of the seven boxes

Original Proceedings  (1) Cases which originate in the United States district courts

Removed from State Court  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U S C , Section 1441 When the petition for removal is granted. check this box

Remanded from Appellate Court  (3) Check this box for cases remanded to the district court for further action  Use the date of remand as

the filing date  Reinstated or Reopened  (4) Check this box for cases reinstated or reopened in the district court  Use the reopening date as

the filing date

Transferred from Another District  (5) For cases transferred under Title 28 U S C  Section 1404(a)  Do not use this for within district transfers or multidistrict litigation transfers

Multidistrict Litigation  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U S C  Section 1407 When this box is checked, do not check (5) above

Appeal to District Judge from Magistrate Judgment  (7) Check this box for an appeal from a magistrate judge's decision

**VI.    Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause  **Do not cite jurisdictional statutes unless diversity.**                    Example:          U S  Civil Statute: 47 USC 553
                                                                  Brief Description: Unauthorized reception of cable service

**VII. Requested in Complaint.** Class Action  Place an "X" in this box if you are filing a class action under Rule 23, F R Cv P

Demand  In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a

preliminary injunction  Jury Demand  Check the appropriate box to indicate whether or not a jury is being demanded

**VIII. Related Cases.** This section of the JS 44 is used to reference related pending cases if any  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases
**Date and Attorney Signature.** Date and sign the civil cover sheet

# EXHIBIT A

(12) **United States Patent**  (10) **Patent No.:**  **US 7,305,506 B1**
Lydon et al.  (45) **Date of Patent:**  **Dec. 4, 2007**

(54) **METHOD AND SYSTEM FOR TRANSFERRING STATUS INFORMATION BETWEEN A MEDIA PLAYER AND AN ACCESSORY**

(75) Inventors: **Gregory T. Lydon**, Santa Cruz, CA (US); **Lawrence G. Bolton**, Fremont, CA (US); **Emily C. Schubert**, Los Altos, CA (US); **Jesse Dorogusker**, Menlo Park, CA (US); **Donald J. Novotney**, San Jose, CA (US); **John B. Filson**, San Jose, CA (US); **David Tupman**, San Francisco, CA (US)

(73) Assignee: **Apple Inc.**, Cupertino, CA (US)

( * ) Notice:  Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **11/476,262**

(22) Filed: **Jun. 27, 2006**

**Related U.S. Application Data**

(63) Continuation-in-part of application No. 10/833,689, filed on Apr. 27, 2004.

(51) Int. Cl.
*G06F 13/42*  (2006.01)
(52) **U.S. Cl.** .................. **710/105**; 710/300; 710/72; 710/63; 710/64
(58) **Field of Classification Search** ...... 710/300–315, 710/62–66, 8–13, 72, 104–105; 455/557, 455/575; 719/312, 327; 709/321, 220
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

6,453,371 B1 *  9/2002  Hampson et al ............ 710/37

| | | | |
|---|---|---|---|
| 6,725,061 B1 * | 4/2004 | Hutchison et al | ........ 455/557 |
| 6,776,660 B1 | 8/2004 | Kubota et al | |
| 6,931,456 B2 * | 8/2005 | Payne et al | ............ 710/9 |
| 7,050,783 B2 * | 5/2006 | Curtiss et al | ..... 455/404.1 |
| 7,062,261 B2 * | 6/2006 | Goldstein et al | ...... 455/419 |
| 7,127,678 B2 * | 10/2006 | Bhesania et al | ....... 715/744 |
| 2003/0220988 A1 * | 11/2003 | Hymel | ........ 709/220 |
| 2004/0103223 A1 * | 5/2004 | Gabehart et al | ....... 710/2 |
| 2004/0224638 A1 * | 11/2004 | Fadell et al | ....... 455/66.1 |
| 2005/0014531 A1 * | 1/2005 | Findikli | .............. 455/557 |
| 2006/0184456 A1 * | 8/2006 | de Janasz | ..... 705/72 |

* cited by examiner

*Primary Examiner*—Raymond N Phan
(74) *Attorney, Agent, or Firm*—Townsend and Townsend and Crew LLP

(57)  **ABSTRACT**

A method, system, and connector interface for transferring status information between a media player and an accessory. The method includes determining, by the accessory, when a button event occurs; and transmitting, by the accessory, at least one button status command to the media player, where the one or more button status commands comprise a context-specific button status command and at least one command associated with a particular media type. According to the method and system disclosed herein, the media player and accessory may utilize a plurality of commands in a variety of environment such as within a connector interface system environment to facilitate the transfer of status information.

**30 Claims, 11 Drawing Sheets**





FIG. 1A

FIG. 1B



FIG. 2A



FIG. 2B



FIG. 2C

| Pin | Signal Name | I/O | Function |
|---|---|---|---|
| 1 | DGND | I | Digital Ground |
| 2 | DGND | I | Digital Ground |
| 3 | TPA+ | I/O | Firewire signal |
| 4 | USB D+ | I/O | USB signal |
| 5 | TPA- | I/O | Firewire signal |
| 6 | USB D- | I/O | USB signal |
| 7 | TPB+ | I/O | Firewire signal |
| 8 | USB PWR | I | USB power in. NOT for powering; only to detect USB host |
| 9 | TPB- | I/O | Firewire signal |
| 10 | Accessory Identify | I | Pull down in dock to notify iPod of specific device |
| 11 | F/W PWR+ | I | Firewire and charger input power (8V to 30V dc) |
| 12 | F/W PWR+ | I | Firewire and charger input power (8V to 30V dc) |
| 13 | Accessory Pwr(3V3) | O | 3.3V output from iPod. Current limited to 100mA. |
| 14 | Reserved | | |
| 15 | DGND | GND | Digital Ground in iPod |
| 16 | DGND | GND | Digital Ground in iPod |
| 17 | Reserved | | |
| 18 | Dock Tx | I | Serial protocol (Data to iPod) |
| 19 | Dock Rx | O | Serial protocol (Data from iPod) |
| 20 | Accessory Detect | I/O | |
| 21 | S Video Y | O | Luminance Component |
| 22 | S Video C | O | Chrominance Component |
| 23 | Video Composite | O | Composite Signal |
| 24 | Remote Sense | I | Detect Remote |
| 25 | LINE-IN L | I | Line level input to the iPod for the left channel |
| 26 | LINE-IN R | I | Line level input to the iPod for the right channel |
| 27 | LINE-OUT L | O | Line level output to the iPod for the left channel |
| 28 | LINE-OUT R | O | Line level output to the iPod for the right channel |
| 29 | Audio Return | GND | Audio return - Signal, never to be grounded inside accessory |
| 30 | DGND | GND | Digital Ground iPod |
| 31 | Chassis | | Chassis ground for connector shell |
| 32 | Chassis | | Chassis ground for connector shell |

FIG. 3A



FIG. 4A

| Pin | Signal Name | I/O | Function |
|---|---|---|---|
| 1 | Audio Out Left / Mono Mic In | I/O | 30mW audio out left channel, also doubles as mono mic in |
| 2 | HP Detect | I | Internal Switch to detect plug insertion |
| 3 | Audio Return | GND | Audio return for left and right audio |
| 4 | Audio Out Right | O | 30mW audio out right channel |
| 5 | Composite Video | O | Video Signal |
| 6 | Accessory 3.3 V | O | 3.3V Accessory power 100mA max |
| 7 | Tx | O | Serial protocol (Data from iPod to Device) |
| 8 | Rx | I | Serial protocol (Data to iPod from Device) |
| 9 | D GND | GND | Digital ground for accessory |

FIG. 3B



FIG. 4B



FIG. 4C                    FIG. 4D



FIG. 5A



FIG. 5B



FIG. 5C



FIG. 5D



FIG. 5E



FIG. 6

US 7,305,506 B1

**1**

## METHOD AND SYSTEM FOR TRANSFERRING STATUS INFORMATION BETWEEN A MEDIA PLAYER AND AN ACCESSORY

### CROSS-REFERENCE TO RELATED APPLICATIONS

This application is a Continuation-In-Part of co-pending U.S. patent application Ser. No. 10/833,689, entitled "Connector Interface System for a Multi-Communication Device", filed on Apr. 27, 2004, and assigned to the assignee of the present application.

### FIELD OF THE INVENTION

The present invention relates generally to electrical devices and more particularly to electrical devices such as media players that communicate with accessory devices.

### BACKGROUND OF THE INVENTION

A media player stores media assets, such as audio tracks or photos that can be played or displayed on the media player. One example of a media player is the iPod® media player, which is available from Apple Computer, Inc. of Cupertino, Calif. Often, a media player acquires its media assets from a host computer that serves to enable a user to manage media assets. As an example, the host computer can execute a media management application to manage media assets. One example of a media management application is iTunes®, version 6.0, produced by Apple Computer, Inc.

A media player typically includes one or more connectors or ports that can be used to interface to the media player. For example, the connector or port can enable the media player to couple to a host computer, be inserted into a docking system, or receive an accessory device. There are today many different types of accessory devices that can interconnect to the media player. For example, a remote control can be connected to the connector or port to allow the user to remotely control the media player. As another example, an automobile can include a connector and the media player can be inserted onto the connector such that an automobile media system can interact with the media player, thereby allowing the media content on the media player to be played within the automobile.

With the introduction of various media types (images and video), communication between a media player and an accessory may be confusing to end users. Furthermore, it may be difficult to determine, if at all, whether information has been successfully transferred between a media player and an accessory.

Thus, there is a need for improved techniques to enable manufacturers of electronic devices to exchange information.

### SUMMARY OF THE INVENTION

A method, system, and connector interface for transferring status information between a media player and an accessory is disclosed. The method includes determining, by the accessory, when a button event occurs; and transmitting, by the accessory, at least one button status command to the media player, where the one or more button status commands comprise a context-specific button status command and at least one command associated with a particular media type.

**2**

According to the method and system disclosed herein, the media player and accessory may utilize a plurality of commands utilized in a variety of environments such as within a connector interface system environment to facilitate the transfer of status information.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIGS. 1A and 1B illustrate a docking connector in accordance with the present invention.

FIG. 2A is a front and top view of a remote connector in accordance with the present invention.

FIG. 2B illustrates a plug to be utilized in the remote connector.

FIG. 2C illustrates the plug inserted into the remote connector.

FIG. 3A illustrates the connector pin designations for the docking connector.

FIG. 3B illustrates the connection pin designations for the remote connector.

FIG. 4A illustrates a typical FireWire connector interface for the docking connector.

FIG. 4B illustrates a reference schematic diagram for an accessory power source.

FIG. 4C illustrates a reference schematic diagram for a system for detecting and identifying accessories for the docking connector.

FIG. 4D is a reference schematic of an electret microphone that may be connected to the remote connector.

FIG. 5A illustrates a media player coupled to different accessories.

FIG. 5B illustrates the media player coupled to a computer.

FIG. 5C illustrates the media player coupled to a car or home stereo system.

FIG. 5D illustrates the media player coupled to a dongle that communicates wirelessly with other accessories.

FIG. 5E illustrates the media player coupled to a speaker system.

FIG. 6 is a flow chart, which illustrates a process for facilitating communication between a media player and an accessory.

### DETAILED DESCRIPTION OF THE INVENTION

The present invention relates generally to electrical devices and more particularly to electrical devices such as media players that communicate with accessory devices. The following description is presented to enable one of ordinary skill in the art to make and use the invention and is provided in the context of a patent application and its requirements. Various modifications to the preferred embodiment and the generic principles and features described herein will be readily apparent to those skilled in the art. Thus, the present invention is not intended to be limited to the embodiment shown but is to be accorded the widest scope consistent with the principles and features described herein.

In a method and system in accordance with the present invention, media players and accessories are able to exchange status information using status commands. For example, in one embodiment, when the accessory determines that a button event occurs, the accessory transmits at least one button status command to the media player. The button status command includes one or more of a context-specific button status command, an image button status

3

command, a video status button command, and an audio button status command. The media player may then transmit at least one acknowledgement status command to the accessory in response to the button status command. The media player and the accessory may utilize status commands, which may include commands associated with dedicated button status commands for different media types (e.g. image/slideshow, video, audio, etc.) The commands provide media control commands that support not only basic buttons such as play/pause, volume up, volume down, next track, and previous track but also media control commands that support context specific buttons such as next album, previous album, down arrow, etc. The media player and accessory may utilize the plurality of commands utilized in a variety of environments to facilitate the transfer of status information. One such environment is within a connector interface system environment such as described in detail hereinbelow.

Connector Interface System Overview

To describe the features of the connector interface system in accordance with the present invention in more detail, refer now to the following description in conjunction with the accompanying drawings.

Docking Connector

FIGS. 1A and 1B illustrate a docking connector 100 in accordance with the present invention. Referring first to FIG. 1A, the keying features 102 are of a custom length 104. In addition, a specific key arrangement is used where one set of keys is separated by one length at the bottom of the connector and another set of keys is separated by another length at the top of the connector. The use of this key arrangement prevents noncompliant connectors from being plugged in and causing potential damage to the device. The connector for power utilizes a Firewire specification for power. The connector includes a first make/last break contact to implement this scheme. FIG. 1B illustrates the first make/last break contact 202 and also illustrates a ground pin and a power pin related to providing an appropriate first make/last break contact. In this example, the ground pin 204 is longer than the power pin 206. Therefore, the ground pin 204 would contact its mating pin in the docking accessory before the power pin 206, minimizing internal electrical damage to the electronics of the device.

In addition, a connector interface system in accordance with the present invention uses both USB and Firewire interfaces as part of the same docking connector alignment, thereby making the design more compatible with different types of interfaces, as will be discussed in detail hereinafter. In so doing, more remote accessories can interface with the media player.

Remote Connector

The connection interface system also includes a remote connector which provides for the ability to output and input audio, and output video and which also provides I/O serial protocol. FIG. 2A is a front and top view of a remote connector 200 in accordance with the present invention. As is seen, the remote connector 200 includes a top headphone receptacle 202, as well as a second receptacle 204 for remote devices. FIG. 2B illustrates a plug 300 to be utilized in the remote connector. The plug 300 allows the functions to be provided via the remote connector. FIG. 2C illustrates the plug 300 inserted into the remote connector 200. Heretofore, all of these features have not been implemented in a remote connector. Therefore, a standard headphone cable can be plugged in, but also special remote control cables, microphone cables, and video cables could be utilized with the remote connector.

4

To describe the features of the connector interface system in more detail, please find below a functional description of the docking connector, remote connector and a command set in accordance with the present invention.

Docking and Remote Connector Specifications

For an example of the connector pin designations for both the docking connector and for the remote connector for a media player such as an iPod device by Apple Computer, Inc., refer now to FIGS. 3A and 3B. FIG. 3A illustrates the connector pin designations for the docking connector FIG. 3B illustrates the connection pin designations for the remote connector.

Docking Connector Specifications

FIG. 4A illustrates a typical Firewire connector interface for the docking connector. The following are some exemplary specifications: Firewire power (8V-30V DC IN, 10W Max). In one embodiment, Firewire may be designed to the IEEE 1394 A Spec (400 Mb/s).

USB Interface

The media player provides two configurations, or modes, of USB device operation: mass storage and media player USB Interface (MPUI). The MPUI allows the media player to be controlled using a media player accessory protocol (MPAP) which will be described in detail later herein, using a USB Human Interface Device (HID) interface as a transport mechanism.

Accessory 3.3 V Power

FIG. 4B illustrates the accessory power source. The media player accessory power pin supplies voltages, for example, 3.0 V to 3.3V+/−5% (2.85 V to 3.465 V) over the 30-pin connector and remote connector (if present). A maximum current is shared between the 30-pin and Audio/Remote connectors.

By default, the media player supplies a particular current such as 5 mA. Proper software accessory detection is required to turn on high power (for example, up to 100 mA) during active device usage. When devices are inactive, they must consume less than a predetermined amount of power such as 5 mA current.

Accessory power is grounded through the Digital GND pins.

FIG. 4C illustrates a reference schematic diagram for a system for detecting and identifying accessories for the docking connector. The system comprises:

a) A resistor to ground allows the device to determine what has been plugged into docking connector. There is an internal pullup on Accessory Identify within the media player.

b) Two pins required (Accessory Identify & Accessory Detect)

FIG. 4D is a reference schematic of an electret microphone that may be connected to the remote connector.

Serial Protocol Communication:

a) Two pins used to communicate to and from device (Rx & Tx)

b) Input & Output (0V=Low, 3.3V=High)

As mentioned previously, media players connect to a variety of accessories. FIGS. 5A-5E illustrate a media player 500 coupled to different accessories. FIG. 5A illustrates a media player 500 coupled to a docking station 502. FIG. 5B illustrates the media player 500' coupled to a computer 504. FIG. 5C illustrates the media player 500" coupled to a car or home stereo system 506. FIG. 5D illustrates the media player 500''' coupled to a dongle 508 that communicates wirelessly with other devices. FIG. 5E illustrates the media

5

player 500"" coupled to a speaker system 510. As is seen, what is meant by accessories includes but is not limited to docking stations, chargers, car stereos, microphones, home stereos, computers, speakers, and accessories which communicate wirelessly with other accessories.

As mentioned previously, this connector interface system could be utilized with a command set for transferring status information between a media player and an accessory. In one embodiment, the accessory may be a host computer or any other electronic device or system that may communicate with the media player. It should be understood by one of ordinary skill in the art that although the above-identified connector interface system could be utilized with the command set, a variety of other connectors or systems could be utilized and they would be within the spirit and scope of the present invention. To describe the utilization of the command set in more detail refer now to the following description in conjunction with the accompanying Figure.

Power Conservation

Accessory device power management is important as media players transition to smaller physical sizes with the objective of extending battery life. Also, some accessories may draw power from the media player, and some accessories supply power to the media player. In one embodiment, as an accessory interacts with the media player, the media player may notify the accessory when the media player state changes (e.g., transitions to on/sleep/hibernate/off states, etc.). In one embodiment, accessory power will be in a low-power mode by default, and will be raised to a high-power mode during playback if the accessory requests intermittent high power. A power management policy may be applied for multi-function devices.

In one embodiment, an accessory is responsible for keeping its power consumption below a preset maximum allowed limit for each media player state. For example, as indicated above, the accessory power may be completely shut off when the media player enters hibernate and off states. Accordingly, in such states, an accessory that is powered by a media player will be unable to wake the media player. In one embodiment, if the media player is in a sleep state, the serial accessory should transmit any packets sent to the media player with a sync byte followed by a short delay before sending the packet. When waking from a sleep state, the accessory may be required to re-identify and re-authenticate itself (as with other devices using the device identification commands and/or authentication commands). Self-powered accessories should detect the presence of media player accessory power and initiate the identification process

Remote Protocol

A remote protocol provides commands that enable the media player and an accessory to interact remotely. For example, as described in more detail below, in one embodiment, some commands enable the accessory to transmit button commands to the media player to manipulate the user interface (UI) of the media player. In one embodiment, the remote protocol transmits to the media player command packets, which contain one or more button status commands, and the media player interprets the button status commands based on a UI application context (e.g., media player UI application context).

Command Functionality

Although a plurality of commands is described hereinbelow, one of ordinary skill in the art recognizes that many other commands could be utilized and their use would be

6

within the spirit and scope of the present invention. Accordingly, the list of commands below is representative, but not exhaustive, of the types of commands that could be utilized to transfer and store data between a media player and an accessory. Furthermore, it is also readily understood by one of ordinary skill in the art that a subset of these commands could be utilized by a media player or an accessory and that use would be within the spirit and scope of the present invention. A description of the functionality of some of these commands is described below.

Status Commands

FIG. 6 is a flow chart, which illustrates a process for facilitating communication between a media player and an accessory. As FIG. 6 illustrates, the process begins in step 602 where one of the media player and the accessory determines when a button event occurs. In one embodiment, a button event occurs when a user selects or presses a control button (e.g., on the accessory). In one embodiment, a command may be utilized to determine when a button event has occurred. Next, in step 604 one of the media player and the accessory transmits at least one button status command to the other of the media player and the accessory, wherein the one or more button status commands include one or more of context-specific button status commands, image button status commands, video commands, and audio button status commands. The transmission of the button status reports occurs when a button event occurs. A button status command includes a button status, which is a bitmask representing each button that is currently pressed. In one embodiment, button status commands are transmitted repeatedly to the media player at preset intervals (e.g., between 30-100 ms) while one or more buttons are pressed. When all buttons are released, the accessory transmits a button status command that indicates that no buttons are pressed

As described in more detail below, there are dedicated button status commands for each media type (e.g. image/slideshow, video, audio, etc.). In one embodiment, media control button status bits may be organized such that the most frequently used buttons will be assigned low bit positions. This may reduce the button status command sizes for frequently used buttons. Button status commands provide media control commands that support not only basic buttons such as play/pause, volume up, volume down, next track, and previous track, but also support media control commands that support context specific buttons such as next album, previous album, down arrow, etc. In one embodiment, an accessory may query the remote protocol to determine which particular media control commands the media player supports

Button status is maintained separately for all ports and all commands. As a result, buttons may be in different states for different media control types. In one embodiment, for a given port and media control type, if a command has not been received within a preset time period after the last button status command, the button status will be reset to an "all buttons up" state.

In some embodiments, some commands may require authentication. For example, context specific send button status commands may require authentication for USB ports. Media control commands require authentication and will therefore require use of a command for device identification (ID) with an authentication option enabled.

Acknowledge Status Command

Still referring to FIG. 6, in a step 606, one of the media player and the accessory transmits at least one acknowledgement status command to the other of the media player

7

and the accessory in response to at least one button status command. In one embodiment, the media player may transmit an acknowledgement status command to the accessory in response to some, but not necessarily all, commands. The acknowledge status command includes an acknowledgement command that indicates a command status, which may include whether the command was received. The command status may also indicate whether the received command does not return any data, whether the received command includes a bad parameter, whether the received command is unsupported by the media player, and/or whether the received command is invalid.

In one embodiment, parameters for the acknowledgment command may include: Command OK, Command failed (valid command, did not succeed), Out of resources (media player internal allocation failed), Bad parameter (command or input parameters invalid), Command pending (cmdPend-Time parameter returned), Not authenticated (not authenticated), Mismatched authentication protocol version, Command ID for which the response is being sent, etc.

In addition to the bitmask that indicates each button that is currently pressed, a status command that the accessory transmits to the media player may include various types of button status commands such as context-specific button status commands, image button status commands, video button status commands, and audio button status commands.

Context-Specific Button Status Command

The context-specific button status command is a command that is associated with particular functions. The accessory transmits a status command containing a context-specific button status command to the media player when a context-specific button event occurs. In one embodiment, parameters for a context-specific button status bitmask may include: PlayPause, VolumeUp, VolumeDown, NextTrack, PreviousTrack, NextAlbum, PreviousAlbum, Stop, Play/resume, Pause, MuteToggle, NextChapter, PreviousChapter, NextPlaylist, PreviousPlaylist, ShuffleSettingAdvance, RepeatSettingAdvance, PowerOn, PowerOff, BacklightFor30 Seconds, BeginFF, BeginRew, RemoteMenu, RemoteSelect, RemoteUpArrow, RemoteDownArrow, etc. In one embodiment, the media player may not return an acknowledgement packet to the device in response to this command.

Image Button Status Command

The image button status command is a command that is associated with image-based media (e.g., photos, slide shows, etc.). The accessory transmits a status command containing an image button status command to the media player when a image-specific button event occurs. In one embodiment, parameters for an image-specific button status bitmask may include: PlayPause, NextImage, PreviousImage, Stop, Play/resume, Pause, ShuffleAdvance, RepeatAdvance, etc. In one embodiment, in response to the image button status command, the media player will return an acknowledgement status command to the accessory with the command status.

Video Button Status Command

The video button status command is a command that is associated with video media (e.g., movies, television shows, etc.). The accessory transmits a status command containing a video button status command to the media player when a video-specific button event occurs. In one embodiment, parameters for a video-specific button status bitmask may include: PlayPause, NextVideo, PreviousVideo, Stop, Play/resume, Pause, BeginFF, BeginREW, Next chapter, Previous chapter, Next frame, Previous frame, Caption advance, etc.

8

In one embodiment, in response to the video button status command, the media player will return an acknowledgement status command to the accessory with the command status.

Audio Button Status Command

The audio button status command is a command that is associated with audio media (e.g., music, audiobooks, podcasts, etc.). The accessory transmits a status command containing an audio button status command to the media player when an audio-specific button event occurs. In one embodiment, parameters for an audio-specific button status bitmask may include: PlayPause, VolumeUp, VolumeDown, NextTrack, PreviousTrack, NextAlbum, PreviousAlbum, Stop, Play/resume, Pause, MuteToggle, NextChapter, PreviousChapter, NextPlaylist, PreviousPlaylist, ShuffleSettingAdvance, RepeatSettingAdvance, BeginFF, BeginRew, Record, etc. In one embodiment, in response to the audio button status command, the media player will return an acknowledgement status command to the accessory with the command status.

A method and system in accordance with the present invention, media players and accessories are able to exchange status information using status commands has been disclosed. In one embodiment, when the accessory determines that a button event occurs, the accessory transmits at least one button status command to the media player. The media player may then transmit at least one acknowledgement status command to the accessory in response to the button status command.

Although the present invention has been described in accordance with the embodiments shown, one of ordinary skill in the art will readily recognize that there could be variations to the embodiments and those variations would be within the spirit and scope of the present invention. For example, the present invention can be implemented using hardware, software, a computer readable medium containing program instructions, or a combination thereof. Software written according to the present invention is to be either stored in some form of computer-readable medium such as memory or CD-ROM, or is to be transmitted over a network, and is to be executed by a processor. Consequently, a computer readable medium is intended to include a computer readable signal, which may be, for example, transmitted over a network. Accordingly, many modifications may be made by one of ordinary skill in the art without departing from the spirit and scope of the appended claims.

What is claimed is:

1. A method for transferring status information between a media player and an accessory, the method comprising:
determining, by the accessory, when a button event occurs; and
transmitting, by the accessory, at least one button status command to the media player, wherein the one or more button status commands comprise a context-specific button status command and at least one command associated with a particular media type,
wherein the button status commands comprise button status bits that are organized such that the most frequently used buttons are assigned low bit positions to reduce the overall button status data transfer size.

2. The method of claim 1 further comprising transmitting, by the media player, at least one acknowledgement status command to the accessory in response to the at least one button status command.

3. The method of claim 1 wherein the one or more button status commands support different media types.

9

4. The method of claim 3 wherein the media types include one or more of image, video, or audio.

5. The method of claim 1 wherein the button status commands support a plurality of buttons including at least play/pause, volume up, volume down, next track, and previous track.

6. The method of claim 1 wherein the button status commands support a plurality of context-specific buttons including at least next album, previous album, and down arrow.

7. A protocol for transferring status information between a media player and an accessory, the protocol comprising:

at least one command for determining, by the accessory, when a button event occurs; and

a plurality of commands for transmitting, by the accessory, at least one button status command to the media player, wherein the one or more button status commands comprise a context-specific button status command and at least one command associated with a particular media type,

wherein the button status commands comprise button status bits that are organized such that the most frequently used buttons are assigned low bit positions.

8. The protocol of claim 7 wherein the plurality of commands comprises a command for transmitting, by the media player, at least one acknowledgement status command to the accessory in response to the at least one button status command.

9. The protocol of claim 7 wherein the one or more button status commands support different media types.

10. The protocol of claim 7 wherein the button status commands support a plurality of buttons including at least play/pause, volume up, volume down, next track, and previous track.

11. The protocol of claim 7 wherein the button status commands support a plurality of context-specific buttons including at least next album, previous album, and down arrow.

12. The protocol of claim 9 wherein the media types include one or more of image, video, or audio.

13. A portable device comprising:

a media player;

an interface coupled to the media player; and

a command set in communication with the interface, wherein the command set enables the media player and an accessory to transfer status information therebetween, the command set comprising:

at least one command for determining, by the accessory, when a button event occurs; and

a plurality of commands for transmitting, by the accessory, at least one button status command to the media player, wherein the one or more button status commands comprise a context-specific button status command and at least one command associated with a particular media type,

wherein the button status commands comprise button status bits that are organized such that the most frequently used buttons are assigned low bit positions.

14. The media player of claim 13 wherein the plurality of commands comprises a command for transmitting, by the media player, at least one acknowledgement status command to the accessory in response to the at least one button status command.

10

15. The media player of claim 13 wherein the one or more button status commands support different media types.

16. The media player of claim 13 wherein the button status commands support a plurality of buttons including at least play/pause, volume up, volume down, next track, and previous track.

17. The media player of claim 13 wherein the button status commands support a plurality of context-specific buttons including at least next album, previous album, and down arrow.

18. The media player of claim 15 wherein the media types include one or more of image, video, or audio.

19. An accessory comprising:

a device for transferring data;

an interface coupled to the device; and

a command set in communication with the interface, wherein the command set enables the media player and an accessory to transfer status information therebetween, the command set comprising:

at least one command for determining, by the accessory, when a button event occurs; and

a plurality of commands for transmitting, by the accessory, at least one button status command to the media player, wherein the one or more button status commands comprise a context-specific button status command and at least one command associated with a particular media type,

wherein the button status commands comprise button status bits that are organized such that the most frequently used buttons are assigned low bit positions.

20. The accessory of claim 19 wherein the plurality of commands comprises a command for transmitting, by the media player, at least one acknowledgement status command to the accessory in response to the at least one button status command.

21. The accessory of claim 19 wherein the one or more button status commands support different media types.

22. The accessory of claim 19 wherein the button status commands support a plurality of buttons including at least play/pause, volume up, volume down, next track, and previous track.

23. The accessory of claim 19 wherein the button status commands support a plurality of context-specific buttons including at least next album, previous album, and down arrow.

24. The accessory of claim 21 wherein the media types include one or more of image, video, or audio.

25. A computer-readable medium containing program instructions for transferring status information between a media player and an accessory, the program instructions which when executed by a computer system cause the computer system to execute a method comprising:

determining, by the accessory, when a button event occurs; and

transmitting, by the accessory, at least one button status command to the media player, wherein the one or more button status commands comprise a context-specific button status command and at least one command associated with a particular media type,

wherein the button status commands comprise button status bits that are organized such that the most frequently used buttons are assigned low bit positions.

26. The computer-readable medium of claim 25 further comprising program instructions for transmitting, by the

**11**

media player, at least one acknowledgement status command to the accessory in response to the at least one button status command

27. The computer-readable medium of claim **25** wherein the one or more button status commands support different media types

28. The computer-readable medium of claim **25** wherein the media types include one or more of image, video, or audio.

**12**

29. The computer-readable medium of claim **25** wherein the button status commands support a plurality of buttons including at least play/pause, volume up, volume down, next track, and previous track.

30. The computer-readable medium of claim **25** wherein the button status commands support a plurality of context-specific buttons such as next album, previous album, and down arrow.

*  *  *  *  *

# EXHIBIT B

(12) **United States Design Patent**         (10) Patent No.:          **US D551,212 S**

Andre et al.                                 (45) Date of Patent:      ** **Sep. 18, 2007**

---

(54) **DOCK INSERT**

(75) Inventors: **Bartley K. Andre**, Menlo Park, CA
(US); **Daniel J. Coster**, San Francisco,
CA (US); **Daniele De Iuliis**, San
Francisco, CA (US); **Richard P.
Howarth**, San Francisco, CA (US);
**Jonathan P. Ive**, San Francisco, CA
(US); **Duncan Robert Kerr**, San
Francisco, CA (US); **Shin Nishibori**,
San Francisco, CA (US); **Matthew
Dean Rohrbach**, San Francisco, CA
(US); **Douglas B. Satzger**, Menlo Park,
CA (US); **Calvin Q. Seid**, Palo Alto,
CA (US); **Christopher J. Stringer**,
Portola Valley, CA (US); **Eugene
Antony Whang**, San Francisco, CA
(US); **Rico Zorkendorfer**, San
Francisco, CA (US)

(73) Assignee: **Apple Inc.**, Cupertino, CA (US)

(**) Term: **14 Years**

(21) Appl. No.: **29/237,111**

(22) Filed: **Aug. 24, 2005**

(51) LOC (8) Cl. ............................................... **14-03**
(52) U.S. Cl. ..................................... **D14/217**
(58) **Field of Classification Search** ......... D14/142,
D14/149, 217, 251, 432, 434, 435, 447, 496;
D13/107, 108, 118; 248/221.11, 309.1; 320/107,
320/110, 113–115; 361/600, 679, 683, 686;
439/529, 534; 455/556.1, 556.2, 557
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| D328,277 S | 7/1992 | Leman et al |
| D336,631 S | 6/1993 | Ivester |
| 5,280,229 A * | 1/1994 | Faude et al ............. 320/110 |
| D350,330 S | 9/1994 | Peterson |
| D374,858 S | 10/1996 | Chu |

| | | |
|---|---|---|
| 5,600,225 A | 2/1997 | Goto |
| 5,627,727 A | 5/1997 | Aguilera et al |
| D388,764 S | 1/1998 | Bartling et al |
| 5,742,149 A * | 4/1998 | Simpson ............... 320/113 |
| D409,987 S | 5/1999 | Okumura |
| D411,166 S | 6/1999 | Uemura et al |
| 5,926,005 A * | 7/1999 | Holcomb et al ......... 320/113 |
| D416,536 S | 11/1999 | Ross et al |
| D419,160 S | 1/2000 | Davidson et al |
| 6,042,414 A | 3/2000 | Kunert |
| D422,556 S | 4/2000 | Okura et al |
| D439,908 S | 4/2001 | Gozani |
| D440,542 S | 4/2001 | Hawkins et al |
| D444,121 S | 6/2001 | Chun et al. |
| D444,124 S | 6/2001 | Casey et al |
| 6,307,348 B1 | 10/2001 | Green |
| D450,707 S | 11/2001 | Francavilla et al |
| D454,332 S | 3/2002 | Yokoyama |
| D459,299 S | 6/2002 | Hughes et al |
| D461,476 S | 8/2002 | Evers et al |
| D463,361 S | 9/2002 | Ruohonen |
| D466,122 S | 11/2002 | Moody |
| D468,305 S | 1/2003 | Ma et al |
| 6,524,240 B1 | 2/2003 | Thede |
| D472,900 S | 4/2003 | Matsumoto |
| D477,823 S | 7/2003 | Lavello |
| 6,711,005 B2 | 3/2004 | Martin |
| D488,440 S * | 4/2004 | Senda ............... D13/108 |
| D495,336 S | 8/2004 | Andre et al |
| 6,798,647 B2 | 9/2004 | Dickie |
| 6,813,528 B1 | 11/2004 | Yang |
| 6,898,080 B2 | 5/2005 | Yin et al |
| D508,459 S * | 8/2005 | Yoshida ............... D13/108 |
| D525,616 S | 7/2006 | Andre et al |
| 7,075,579 B2 * | 7/2006 | Whitby et al ......... 348/375 |
| 7,145,603 B2 * | 12/2006 | Whitby et al ......... 348/375 |
| 2002/0103008 A1 | 8/2002 | Rahn et al |
| 2003/0198015 A1 | 10/2003 | Vogt |
| 2006/0250764 A1 | 11/2006 | Howarth et al |

OTHER PUBLICATIONS

U.S. Appl. No. 29/237,097 entitled "Dock Insert" filed Aug. 24, 2005
U.S. Appl. No. 29/237,112 entitled "Dock Insert" filed Aug. 24, 2005
U.S. Appl. No. 29/237,233 entitled "Docking Station" filed Aug. 24, 2005




U.S. Appl. No. 29/237,084 entitled "Docking Station" filed Aug. 24, 2005

U.S. Appl. No. 11/212,302 entitled "Docking Station for Hand Held Electronic Devices", filed Aug. 24, 2005

"iPod Dock Cradle", downloaded Apr. 11, 2003, www.book-endzdocks.com/bookendz/dock_cradel.htm

"BookEndz Home Page", downloaded Apr. 11, 2003, www.bookendzdocks.com/bookendz/index.htm

"Atech Flash Technology Iduo Ipod Dock and card Reader", www.the-gadgeteer.com, downloaded Nov. 21, 2005

"Adaptec xHub for Notebooks", http://www.everythingusb.com/hardware/index/Adaptec_xHub_for_Notebooks.htm, downloaded Nov. 22, 2005

"Belkin's Top loading USB Hub for iPod shuffle", http://www.everythingusb.com/belkin_hispeed_usb_2.0_4-port_hub.html, downloaded Nov. 22, 2005

"Belkin Hi-Speed USB 2.0 7_Port Hub", http://www.everythingusb.com/hardware/index/Belkin_Hi-Speed_USB_2.0_7-Port_Hub, downloaded Nov. 22, 2005

Office Action, dated Nov. 1, 2006, Taiwan Design Application No. 95300373

Office Action, dated Nov. 1, 2006, Taiwan Design Application No. 95300368

Written Primary Examination Decision of Rejection, dated Jan. 12, 2007, Taiwan Design Application No. 95300373

Written Primary Examination Decision of Rejection, dated Jan. 12, 2007, Taiwan Design Application No. 95300368

* cited by examiner

*Primary Examiner*—Stella Reid
*Assistant Examiner*—Keli' L. Acker
(74) *Attorney, Agent, or Firm*—Beyer Weaver LLP

(57)        **CLAIM**

We claim the ornamental design for a dock insert, substantially as shown and described.

**DESCRIPTION**

This application is related to: (i) U.S. Design patent application Ser. No.: 29/237,097, filed concurrently and entitled "Dock Insert", which is hereby incorporated herein by reference, and (ii) U.S. Design patent application Ser. No.: 29/237,112, filed concurrently and entitled "Dock Insert", which is hereby incorporated herein by reference.

Various examples of docking station embodiments are shown and described, for example in U.S. Design patent application Ser. No.: 29/237,233, filed concurrently and entitled "Docking Station"; and U.S. Design patent application Ser. No.: 29/237,084, filed concurrently and entitled "Docking Station", both of which are hereby incorporated herein by reference.

All of the material from the two U.S. Design Patent applications that is essential to the claimed design is included herein. Any material in the two U.S. Design Patent applications that is not present herein forms no part of the claimed design.

FIG. 1 is a top perspective view of a dock insert embodying our new design.

FIG. 2 is a bottom perspective view of the dock insert.

FIG. 3 is a top view for the dock insert.

FIG. 4 is a bottom view for the dock insert.

FIG. 5 is a rear view for the dock insert.

FIG. 6 is a front view for the dock insert.

FIG. 7 is a left side view for the dock insert.

FIG. 8 is a right side view for the dock insert.

FIG. 9 is an exemplary perspective view of how a docking system can incorporate the dock insert with a docking station; and,

FIG. 10 is an exemplary top view of a docking system that incorporates the dock insert with a docking station.

The docking station of FIGS. 9 and 10, which are illustrated in broken lines, are provided to show environmental structure only and therefore form no part of the claimed design.

**1 Claim, 4 Drawing Sheets**



FIG. 2

FIG. 4

FIG. 1

FIG. 3



FIG. 7



FIG. 8



FIG. 5



FIG. 6



FIG. 9



FIG. 10

# EXHIBIT C

Exhibit C

(12) **United States Design Patent**     (10) Patent No.:     **US D551,213 S**

Andre et al.     (45) Date of Patent:     ** **Sep. 18, 2007**

---

(54) **DOCK INSERT**

(75) Inventors: **Bartley K. Andre**, Menlo Park, CA (US); **Daniel J. Coster**, San Francisco, CA (US); **Daniele De Iuliis**, San Francisco, CA (US); **Richard P. Howarth**, San Francisco, CA (US); **Jonathan P. Ive**, San Francisco, CA (US); **Duncan Robert Kerr**, San Francisco, CA (US); **Shin Nishibori**, San Francisco, CA (US); **Matthew Dean Rohrbach**, San Francisco, CA (US); **Douglas B. Satzger**, Menlo Park, CA (US); **Calvin Q. Seid**, Palo Alto, CA (US); **Christopher J. Stringer**, Portola Valley, CA (US); **Eugene Antony Whang**, San Francisco, CA (US); **Rico Zorkendorfer**, San Francisco, CA (US)

(73) Assignee: **Apple Inc.**, Cupertino, CA (US)

(**) Term: **14 Years**

(21) Appl. No.: **29/237,112**

(22) Filed: **Aug. 24, 2005**

(51) LOC (8) Cl. .......................................... **14-03**
(52) U.S. Cl. ....................................... **D14/217**
(58) Field of Classification Search .......... D14/142, D14/149, 217, 251, 432, 434, 435, 447, 496; D13/107, 108, 118; 248/221.11, 309.1; 320/107, 320/110, 113–115; 361/600, 679, 683, 686; 439/529, 534; 455/556.1, 556.2, 557
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D328,277 S | 7/1992 | Leman et al. | |
| D336,631 S | 6/1993 | Ivester | |
| 5,280,229 A * | 1/1994 | Faude et al | 320/110 |
| D350,330 S | 9/1994 | Peterson | |
| D374,858 S | 10/1996 | Chu | |

| | | | |
|---|---|---|---|
| 5,600,225 A | 2/1997 | Goto | |
| 5,627,727 A | 5/1997 | Aguilera et al | |
| D388,764 S | 1/1998 | Bartling et al | |
| 5,742,149 A * | 4/1998 | Simpson | 320/113 |
| D409,987 S | 5/1999 | Okumura | |
| D411,166 S | 6/1999 | Uemura et al | |
| 5,926,005 A * | 7/1999 | Holcomb et al | 320/113 |
| D416,536 S | 11/1999 | Ross et al | |
| D419,160 S | 1/2000 | Davidson et al | |
| 6,042,414 A | 3/2000 | Kunert | |
| D422,556 S | 4/2000 | Okura et al | |
| D439,908 S | 4/2001 | Gozani | |
| D440,542 S | 4/2001 | Hawkins et al | |
| D444,121 S | 6/2001 | Chun et al | |
| D444,124 S | 6/2001 | Casey et al | |
| 6,307,348 B1 | 10/2001 | Green | |
| D450,707 S | 11/2001 | Francavilla et al | |
| D454,332 S | 3/2002 | Yokoyama | |
| D459,299 S | 6/2002 | Hughes et al | |
| D461,476 S | 8/2002 | Evers et al | |
| D463,361 S | 9/2002 | Ruohonen | |
| D466,122 S | 11/2002 | Moody | |
| D468,305 S | 1/2003 | Ma et al | |
| 6,524,240 B1 | 2/2003 | Thede | |
| D472,900 S | 4/2003 | Matsumoto | |
| D477,823 S | 7/2003 | Lavello | |
| 6,711,005 B2 | 3/2004 | Martin | |
| D488,440 S * | 4/2004 | Senda | D13/108 |
| D495,336 S | 8/2004 | Andre et al | |
| 6,798,647 B2 | 9/2004 | Dickie | |
| 6,813,528 B1 | 11/2004 | Yang | |
| 6,898,080 B2 | 5/2005 | Yin et al | |
| D508,459 S * | 8/2005 | Yoshida | D13/108 |
| D525,616 S | 7/2006 | Andre et al | |
| 7,075,579 B2 * | 7/2006 | Whitby et al | 348/375 |
| 7,145,603 B2 * | 12/2006 | Whitby et al | 348/375 |
| 2002/0103008 A1 | 8/2002 | Rahn et al | |
| 2003/0198015 A1 | 10/2003 | Vogt | |
| 2006/0250764 A1 | 11/2006 | Howarth et al | |

OTHER PUBLICATIONS

U.S. Appl. No. 29/237,097 entitled "Dock Insert" filed Aug. 24, 2005

U.S. Appl. No. 29/237,111 entitled "Dock Insert" filed Aug. 24, 2005

U.S. Appl. No. 29/237,233 entitled "Docking Station" filed Aug. 24, 2005



U S Appl No 29/237,084 entitled "Docking Station" filed Aug 24, 2005

U S Appl No 11/212,302 entitled "Docking Station for Hand Held Electronic Devices", filed Aug 24, 2005

"iPod Dock Cradle", downloaded Apr 11, 2003, www.bookendzdocks.com/bookendz/dock_cradel.htm

"BookEndz Home Page", downloaded Apr 11, 2003, www.bookendzdocks.com/bookendz/index.htm

"Atech Flash Technology Iduo Ipod Dock and card Reader", www.the-gadgeteer.com, downloaded Nov 21, 2005

"Adaptec xHub for Notebooks", http://www.everythingusb.com/hardware/index/Adaptec_xHub_for Notebooks.htm, downloaded Nov. 22, 2005

"Belkin's Top loading USB Hub for iPod shuffle", http://www.everythingusb.com/belkin_hispeed_usb_2 0_4-port_hub.html, downloaded Nov 22, 2005

"Belkin Hi-Speed USB 2 07_Port Hub", http://www.everythingusb.com/hardware/index/Belkin_Hi-Speed_USB_2 0_7-Port_ Hub , downloaded Nov 22, 2005

Office Action, dated Nov 1, 2006, Taiwan Design Application No 95300373

Office Action, dated Nov 1, 2006, Taiwan Design Application No 95300368

Written Primary Examination Decision of Rejection, dated Jan 12, 2007, Taiwan Design Application No 95300373

Written Primary Examination Decision of Rejection, dated Jan 12, 2007, Taiwan Design Application No 95300368

* cited by examiner

*Primary Examiner*—Stella Reid
*Assistant Examiner*—Keli' L Acker
(74) *Attorney, Agent, or Firm*—Beyer Weaver LLP

(57)    **CLAIM**

We claim the ornamental design for a dock insert, substantially as shown and described

### DESCRIPTION

This application is related to: (i) U S Design patent application Ser No 29/237,097, filed concurrently and entitled "Dock Insert", which is hereby incorporated herein by reference, and (ii) U S Design patent application Ser No : 29/237,111, filed concurrently and entitled "Dock Insert", which is hereby incorporated herein by reference

Various examples of docking station embodiments are shown and described, for example in U S Design patent application Ser No : 29/237,233, filed concurrently and entitled "Docking Station"; and U.S. Design patent application Ser. No. 29/237,084, filed concurrently and entitled "Docking Station", both of which are hereby incorporated herein by reference

All of the material from the two U S Design Patent applications that is essential to the claimed design is included herein Any material in the two U S Design Patent applications that is not present herein forms no part of the claimed design

FIG 1 is a top perspective view of a dock insert embodying our new design

FIG 2 is a bottom perspective view of the dock insert

FIG 3 is a top view for the dock insert

FIG 4 is a bottom view for the dock insert

FIG 5 is a rear view for the dock insert

FIG 6 is a front view for the dock insert

FIG 7 is a left side view for the dock insert

FIG 8 is a right side view for the dock insert

FIG 9 is an exemplary perspective view of how a docking system can incorporate the dock insert with a docking station; and,

FIG 10 is an exemplary top view of a docking system that incorporates the dock insert with a docking station

The docking station of FIGS 9 and 10, which are illustrated in broken lines, are provided to show environmental structure only and therefore form no part of the claimed design

**1 Claim, 4 Drawing Sheets**





FIG. 7

FIG. 8



FIG. 5

FIG. 6



FIG. 9



FIG. 10

# EXHIBIT D

(12) **United States Design Patent**    (10) Patent No.:    **US D552,085 S**

Andre et al.    (45) Date of Patent:    ∗∗    **Oct. 2, 2007**

(54) **DOCK INSERT**

(75) Inventors: **Bartley K. Andre**, Menlo Park, CA (US); **Daniel J. Coster**, San Francisco, CA (US); **Daniele De Iuliis**, San Francisco, CA (US); **Richard P. Howarth**, San Francisco, CA (US); **Jonathan P. Ive**, San Francisco, CA (US); **Duncan Robert Kerr**, San Francisco, CA (US); **Shin Nishibori**, San Francisco, CA (US); **Matthew Dean Rohrbach**, San Francisco, CA (US); **Douglas B. Satzger**, Menlo Park, CA (US); **Calvin Q. Seid**, Palo Alto, CA (US); **Christopher J. Stringer**, Portola Valley, CA (US); **Eugene Antony Whang**, San Francisco, CA (US); **Rico Zorkendorfer**, San Francisco, CA (US)

(73) Assignee: **Apple Inc.**, Cupertino, CA (US)

(∗∗) Term: **14 Years**

(21) Appl. No.: 29/237,097

(22) Filed: **Aug. 24, 2005**

(51) LOC (8) Cl. .................................................. **14-03**
(52) U.S. Cl. .................................................. **D14/217**
(58) Field of Classification Search ........... D14/142, D14/149, 217, 251, 432, 434, 435, 447, 496; D13/107, 108, 118; 248/221 11, 309.1; D20/107, D20/110, 113–115; 361/600, 679, 683, 686; 439/529, 534; 455/556 1, 556 2, 557
See application file for complete search history.

(56) **References Cited**

U S PATENT DOCUMENTS

| | | |
|---|---|---|
| D328,277 S | 7/1992 | Leman et al |
| D336,631 S | 6/1993 | Ivester |
| 5,280,229 A ∗ | 1/1994 | Faude et al .......... 320/110 |
| D350,330 S | 9/1994 | Peterson |
| D374,858 S | 10/1996 | Chu |

| | | |
|---|---|---|
| 5,600,225 A | 2/1997 | Goto |
| 5,627,727 A | 5/1997 | Aguilera et al |
| D388,764 S | 1/1998 | Bartling et al |
| 5,742,149 A ∗ | 4/1998 | Simpson ............... 320/113 |
| D409,987 S | 5/1999 | Okumura |
| D411,166 S | 6/1999 | Uemura et al |
| 5,926,005 A ∗ | 7/1999 | Holcomb et al ......... 320/113 |
| D416,536 S | 11/1999 | Ross et al |
| D419,160 S | 1/2000 | Davidson et al |
| 6,042,414 A | 3/2000 | Kunert |
| D422,556 S | 4/2000 | Okura et al |
| D439,908 S | 4/2001 | Gozani |
| D440,542 S | 4/2001 | Hawkins et al |
| D444,121 S | 6/2001 | Chun et al. |
| D444,124 S | 6/2001 | Casey et al |
| 6,307,348 B1 | 10/2001 | Green |
| D450,707 S | 11/2001 | Francavilla et al |
| D454,332 S | 3/2002 | Yokoyama |
| D459,299 S | 6/2002 | Hughes et al |
| D461,476 S | 8/2002 | Evers et al |
| D463,361 S | 9/2002 | Ruohonen |
| D466,122 S | 11/2002 | Moody |
| D468,305 S | 1/2003 | Ma et al |
| 6,524,240 B1 | 2/2003 | Thede |
| D472,900 S | 4/2003 | Matsumoto |
| D477,823 S | 7/2003 | Lavello |
| 6,711,005 B2 | 3/2004 | Martin |
| D488,440 S ∗ | 4/2004 | Senda ..................... D13/108 |
| D495,336 S | 8/2004 | Andre et al |
| 6,798,647 B2 | 9/2004 | Dickie |
| 6,813,528 B1 | 11/2004 | Yang |
| 6,898,080 B2 | 5/2005 | Yin et al |
| D508,459 S ∗ | 8/2005 | Yoshida ................. D13/108 |
| D525,616 S | 7/2006 | Andre et al |
| 7,075,579 B2∗ | 7/2006 | Whitby et al ........... 348/375 |
| 7,145,603 B2∗ | 12/2006 | Whitby et al ........... 348/375 |
| 2002/0103008 A1 | 8/2002 | Rahn et al |
| 2003/0198015 A1 | 10/2003 | Vogt |
| 2006/0250764 A1 | 11/2006 | Howarth et al |

OTHER PUBLICATIONS

U S Appl No 29/237,111 entitled "Dock Insert" filed Aug 24, 2005
U S Appl No 29/237,112 entitled "Dock Insert" filed Aug 24, 2005
U S Appl No 29/237,233 entitled "Docking Station" filed Aug 24, 2005



U.S. Appl. No. 29/237,084 entitled "Docking Station" filed Aug. 24, 2005
U.S. Appl. No. 11/212,302 entitled "Docking Station for Hand Held Electronic Devices", filed Aug. 24, 2005
"iPod Dock Cradle", downloaded Apr. 11, 2003, www.bookendzdocks.com/bookendz/dock_cradel.htm
"BookEndz Home Page", downloaded Apr. 11, 2003, www.bookendzdocks.com/bookendz/index.htm
"Atech Flash Technology Iduo Ipod Dock and card Reader", www.the-gadgeteer.com, downloaded Nov. 21, 2005
"Adaptec xHub for Notebooks", http://www.everythingusb.com/hardware/index/Adaptec_xHub_for_Notebooks.htm, downloaded Nov. 22, 2005
"Belkin's Top loading USB Hub for iPod shuffle", http://www.everythingusb.com/belkin_hispeed_usb_2.0    4-port_hub.html, downloaded Nov. 22, 2005
"Belkin Hi-Speed USB 2.07_Port Hub", http://www.everythingusb.com/hardware/index/Belkin_Hi-Speed_USB_2.0  _7-Port_Hub , downloaded Nov. 22, 2005
Office Action, dated Nov. 1, 2006, Taiwan Design Application No. 95300373
Office Action, dated Nov. 1, 2006, Taiwan Design Application No. 95300368
Written Primary Examination Decision of Rejection, dated Jan. 12, 2007, Taiwan Design Application No. 95300373
Written Primary Examination Decision of Rejection, dated Jan. 12, 2007, Taiwan Design Application No. 95300368

* cited by examiner

*Primary Examiner*—Stella Reid
*Assistant Examiner*—Keli' L. Acker
(74) *Attorney, Agent, or Firm*—Beyer Weaver, LLP

(57)                          **CLAIM**

We claim the ornamental design for a dock insert, substantially as shown and described

**DESCRIPTION**

This application is related to (i) U.S. Design patent application Ser. No. 29/237,111, filed concurrently and entitled "Dock Insert", which is hereby incorporated herein by reference, and (ii) U.S. Design patent application Ser. No. 29/237,112, filed concurrently and entitled "Dock Insert", which is hereby incorporated herein by reference

Various examples of docking station embodiments are shown and described, for example in U.S. Design patent application Ser. No. 29/237,233, filed concurrently and entitled "Docking Station"; and U.S. Design patent application Ser. No. 29/237,084, filed concurrently and entitled "Docking Station", both of which are hereby incorporated herein by reference

All of the material from the two U.S. Design patent applications that is essential to the claimed design is included herein. Any material in the two U.S. Design applications that is not present herein forms no part of the claimed design

FIG. 1 is a top perspective view of a dock insert embodying our new design.

FIG. 2 is a bottom perspective view for the dock insert shown in FIG. 1

FIG. 3 is a top view for the dock insert shown in FIG. 1

FIG. 4 is a bottom view for the dock insert shown in FIG. 1.

FIG. 5 is a rear view for the dock insert shown in FIG. 1.

FIG. 6 is a front view for the dock insert shown in FIG. 1

FIG. 7 is a left side view for the dock insert shown in FIG. 1

FIG. 8 is a right side view for the dock insert shown in FIG. 1.

FIG. 9 is a top perspective view of a dock insert in accordance with another embodiment of the present design

FIG. 10 is a bottom perspective view for the dock insert shown in FIG. 9.

FIG. 11 is a top view for the dock insert shown in FIG. 9

FIG. 12 is a bottom view for the dock insert shown in FIG. 9.

FIG. 13 is a rear view for the dock insert shown in FIG. 9.

FIG. 14 is a front view for the dock insert shown in FIG. 9.

FIG. 15 is a left side view for the dock insert shown in FIG. 9

FIG. 16 is a right side view for the dock insert shown in FIG. 9

FIG. 17 is an exemplary perspective view of how a docking system can incorporate the dock insert of FIGS. 1 or 9 with a docking station.

FIG. 18 is an exemplary top view of a docking system that incorporates the dock insert of FIG. 1 with a docking station; and,

FIG. 19 is an exemplary top view of a docking system that incorporates the dock insert of FIG. 9 with a docking station.

The docking station of FIGS. 17–19, which are illustrated in broken lines, are provided to show environmental structure only and therefore form no part of the claimed design

**1 Claim, 6 Drawing Sheets**



FIG. 2

FIG. 4

FIG. 1

FIG. 3



FIG. 7



FIG. 8



FIG. 5

FIG. 6



FIG. 11

FIG. 12

FIG. 9

FIG. 10



FIG. 15



FIG. 16



FIG. 13



FIG. 14



FIG. 17



FIG. 19

FIG. 18

# EXHIBIT E

(12) **United States Design Patent**     (10) Patent No.:        **US D558,738 S**

Andre et al.                            (45) Date of Patent:   ∗∗   **Jan. 1, 2008**

(54) **DOCKING STATION**

(75) Inventors: **Bartley K. Andre**, Menlo Park, CA
(US); **Daniel J. Coster**, San Francisco,
CA (US); **Daniele De Iuliis**, San
Francisco, CA (US); **Richard P.
Howarth**, San Francisco, CA (US);
**Jonathan P. Ive**, San Francisco, CA
(US); **Duncan Robert Kerr**, San
Francisco, CA (US); **Shin Nishibori**,
San Francisco, CA (US); **Matthew
Dean Rohrbach**, San Francisco, CA
(US); **Douglas B. Satzger**, Menlo Park,
CA (US); **Calvin Q. Seid**, deceased,
late of Palo Alto, CA (US); by **Vincent
Keane Seid**, legal representative, Los
Gatos, CA (US); **Christopher J.
Stringer**, Woodside, CA (US); **Eugene
Antony Whang**, San Francisco, CA
(US); **Rico Zorkendorfer**, San
Francisco, CA (US)

(73) Assignee: **Apple Inc.**, Cupertino, CA (US)

(∗∗) Term: **14 Years**

(21) Appl. No.: **29/237,084**

(22) Filed: **Aug. 24, 2005**

(51) LOC (8) Cl. . . . . . . . . . . . . . . . . **14-03**
(52) U.S. Cl. . . . . . . . . . . . . . . . . . . . . **D14/217**
(58) Field of Classification Search ......... D14/142,
D14/149, 217, 251, 432, 434, 435, 447, 496;
D13/107, 108, 118; 248/221 11, 309 1; 320/107,
320/110, 113–115; 361/600, 679, 683, 686;
439/529, 534; 455/556 1, 556 2, 557
See application file for complete search history

(56)                **References Cited**

U S PATENT DOCUMENTS

| | | |
|---|---|---|
| D328,277 S | 7/1992 | Leman et al |
| D336,631 S | 6/1993 | Ivester |
| D350,330 S | 9/1994 | Peterson |

| | | | |
|---|---|---|---|
| D374,858 S | 10/1996 | Chu | |
| 5,600,225 A | 2/1997 | Goto | |
| 5,627,727 A | 5/1997 | Aguilera et al | |
| D385,530 S ∗ | 10/1997 | Hames et al | D13/107 |
| D388,764 S | 1/1998 | Bartling et al | |
| D397,996 S ∗ | 9/1998 | Smith | D13/168 |
| D409,987 S | 5/1999 | Okumura | |
| D411,166 S | 6/1999 | Uemura et al | |
| 5,952,814 A ∗ | 9/1999 | Van Lerberghe | 320/108 |
| D416,536 S | 11/1999 | Ross et al | |
| D419,160 S | 1/2000 | Davidson et al | |
| 6,042,414 A | 3/2000 | Kunert | |
| D422,556 S | 4/2000 | Okura et al | |
| D439,908 S | 4/2001 | Gozani | |
| D440,542 S | 4/2001 | Hawkins et al | |
| D442,939 S ∗ | 5/2001 | Goldenburg | D14/191 |
| D444,121 S | 6/2001 | Chun et al | |
| D444,124 S | 6/2001 | Casey et al | |
| 6,307,348 B1 | 10/2001 | Green | |
| D450,707 S | 11/2001 | Francavilla et al | |
| D454,332 S | 3/2002 | Yokoyama | |
| D459,299 S | 6/2002 | Hughes et al | |
| D461,476 S | 8/2002 | Evers et al | |
| D463,361 S | 9/2002 | Ruohonen | |
| D466,122 S | 11/2002 | Moody | |
| D468,305 S | 1/2003 | Ma et al | |
| 6,524,240 B1 | 2/2003 | Thede | |
| D472,900 S | 4/2003 | Matsumoto | |
| D477,823 S | 7/2003 | Lavello | |
| 6,711,005 B2 | 3/2004 | Martin | |
| D495,336 S | 8/2004 | Andre et al | |
| 6,798,647 B2 | 9/2004 | Dickie | |
| 6,813,528 B1 | 11/2004 | Yang | |
| 6,898,080 B2 | 5/2005 | Yin et al | |
| D510,091 S ∗ | 9/2005 | Mori et al | D14/434 |
| D525,616 S | 7/2006 | Andre et al | |
| 7,075,579 B2∗ | 7/2006 | Whitby et al | 348/375 |
| D526,321 S ∗ | 8/2006 | Hayes et al | D14/435 |
| D530,717 S ∗ | 10/2006 | Mori et al | D14/434 |
| D532,005 S ∗ | 11/2006 | Leith | D14/253 |
| 7,145,603 B2∗ | 12/2006 | Whitby et al | 348/375 |
| D535,614 S ∗ | 1/2007 | Majanen et al | D13/108 |
| D544,899 S ∗ | 6/2007 | Li et al | D16/242 |
| 2002/0103008 A1 | 8/2002 | Rahn et al | |
| 2003/0198015 A1 | 10/2003 | Vogt | |



2006/0250764 A1    11/2006  Howarth et al

OTHER PUBLICATIONS

U.S Appl No. 29/237,097 entitled "Dock Insert" filed Aug. 24, 2005
U.S Appl No. 29/237,111 entitled "Dock Insert" filed Aug. 24, 2005
U.S Appl No. 29/237,112 entitled "Dock Insert" filed Aug. 24, 2005
U.S Appl No. 29/237,233 entitled "Docking Station" filed Aug 24, 2005
U.S Appl No. 11/212,302 entitled "Docking Station for Hand Held Electronic Devices", filed Aug. 24, 2005
"iPod Dock Cradle", downloaded Apr 11, 2003, www.book-endzdocks.com/bookendz/dock_cradel.htm
"BookEndz Home Page", downloaded Apr 11, 2003, www.bookendzdocks.com/bookendz/index.htm
"Atech Flash Technology Iduo Ipod Dock and card Reader", www.the-gadgeteer.com, downloaded Nov 21, 2005
"Adaptec xHub for Notebooks", http://www.everythingusb.com/hardware/index/Adaptec_xHub_for_Notebooks.htm, downloaded Nov 22, 2005
"Belkin's Top loading USB Hub for iPod shuffle", http://www.everythingusb.com/belkin_hispeed_usb_2.0_4-port_hub.html, downloaded Nov 22, 2005
"Belkin  Hi-Speed  USB  2.07_Port  Hub", http://www.everythingusb.com/hardware/index/Belkin_Hi-Speed_USB_2.0_7-Port_Hub , downloaded Nov 22, 2005

* cited by examiner

*Primary Examiner*—Stella Reid
*Assistant Examiner*—Keli' L. Acker
(74) *Attorney, Agent, or Firm*—Beyer Weaver LLP

(57)            **CLAIM**

We claim the ornamental design for a docking station, substantially as shown and described

**DESCRIPTION**

This application is related to: U.S. Design patent application Ser. No. 29/237,233, filed concurrently and entitled "Docking Station", which is hereby incorporated herein by reference.

Various examples of dock insert embodiments are shown and described, for example in (i) U.S. Design patent application Ser. No. 29/237,097, filed concurrently and entitled "Dock Insert"; (ii) U.S. Design patent application Ser. No. 29/237,111, filed concurrently and entitled "Dock Insert"; and (iii) U.S. Design patent application Ser. No. 29/237,112, filed concurrently and entitled "Dock Insert", each of which is hereby incorporated herein by reference.

All of the material from the three U.S. Design patent applications that is essential to the claimed design is included herein Any material in the three U.S. Design patent applications that is not present herein forms no part of the claimed design.

FIG. 1 is a front perspective view of a docking station embodying our new design

FIG. 2 is a rear perspective view of the docking station.

FIG. 3 is a top view for the docking station

FIG. 4 is an exemplary perspective view of how a docking system can incorporate the docking station with a dock insert.

FIGS. 5–8 are exemplary top views of a docking system that incorporates different dock inserts into the docking station; and,

FIG. 9 is an exemplary perspective view of the docking station integrated into a portion of an electronic device such as a portable music player (e.g. boom box).

The dock inserts of FIG. 4 and the electronic device of FIG. 9, which are illustrated in broken lines, are provided to show environmental structure only and therefore form no part of the claimed design

The broken lines immediately adjacent the shaded areas represent the bounds of the claimed design while all other broken lines are directed to environment and are for illustrative purposes only; the broken lines form no part of the claimed design

**1 Claim, 6 Drawing Sheets**



FIG. 1



FIG. 2



FIG. 3



FIG. 4



FIG. 5

FIG. 6

U.S. Patent        Jan. 1, 2008        Sheet 5 of 6        US D558,738 S



FIG. 7



FIG. 8



FIG. 9